## KILLINGSWORTH v. CRUMP.
### No. 14337.

Court of Civil Appeals of Texas.
Dallas.

June 8, 1951.

Rehearing Denied June 29, 1951.

Jack T. Life, Athens, for appellant.

Henry Klepak, Dallas, for appellee.

BOND, Chief Justice.

This is a suit for debt in the sum of $1,859.19 brought by Edward Crump, d/b/a Crump Printing Company, against Meritone Corporation, alleged to be a Delaware corporation having permit to do business in Texas, with its principal office and place of business in Dallas, Dallas County, Texas, with an agent residing in the City of Dallas. The plaintiff vouched into the suit Owen

Killingsworth, a resident of Athens, Henderson County, Texas. Liability of the defendant Killingsworth is severally based upon (a) an alleged oral agreement to pay the debt of Meritone Corporation for the printing of office supplies, advertising placards, cards, etc.; (b) that he took possession of all machinery and equipment of any value owned by the corporation as enumerated in a chattel mortgage as security for debt due him, and which, "as a matter of law," plaintiff alleges, made the defendant Killingsworth a trustee for the benefit of all creditors of the corporation to the extent of the value of such machinery and equipment and such other assets as were taken into his possession and converted to his use and benefit.

In due order of pleadings the defendant Killingsworth filed plea of privilege in legal form to be sued in Henderson County, Texas, the county of his residence; and, subject thereto, answered to the merits by special exceptions, general and special denials. The defendant corporation made no appearance; hence it will not be further noticed in this opinion. As against the defendant Killingsworth's plea of privilege, the plaintiff filed controverting affidavit alleging, as in his original petition, that the principal office and place of business of the defendant corporation is located at 3310 Putnam Drive, Dallas, Texas, and that its agent for service is Horace T. Ardinger who resides at 3110 Bryn Mawr, Dallas; hence the two defendants residing in different counties, venue of the suit is maintainable in either Dallas County or Henderson County, at the election of the plaintiff, under exception 4, Art. 1995, Vernon's Ann.Civ.St. Killingsworth alone will be designated here as defendant.

Hearing on the plea of privilege and trial to the merits were had before the trial court at the same time. The court overruled the defendant's plea of privilege and, on the merits, entered judgment in favor of the plaintiff against the defendant Meritone Corporation and the defendant Owen Killingsworth "as trustee," jointly and severally, in the sum of $1,531.59 with 6% interest per annum from November 15, 1948 until paid, and all costs of suit.

In due time the defendant Killingsworth alone perfected an appeal challenging the findings, order and judgment of the trial court in appropriate assignments of error, and presents here germane points of error to the action of the trial court in overruling his plea of privilege, and to the judgment against him as having no support in evidence and contrary to the evidence.

We deem it unnecessary to relate seriatim the numerous points of error raised by the defendant, in view of our ultimate conclusion that the uncontroverted evidence, viewed as a whole, presents a question of law in respect to the defendant's liability justifying this Court to reverse the judgment of the trial court and enter such judgment as should have been rendered in the court below.

The record evidence reveals that prior to July 1948 Permatone Corporation (name subsequently changed to Meritone) was engaged in processing an emulsified antifreeze, with salt base as its fundamental constituent, for use in automobiles or other motor cooling systems to prevent freezing. During the summer or warm months, the product was usually sold by the defendant manufacturer exclusively to jobbers for resale to the public, generally during the winter, at a price of $3.50 per gallon. The corporation did have an office and a place of business in Dallas, but at the time of the institution of this suit it had ceased to do business and there is no evidence that it then had an agent in Dallas County.

In September, or the latter part of August 1948, the defendant Killingsworth became connected with the corporation, in that, he extended financial assistance to the corporation in furtherance of the enterprise and rendered such services to it as were needed in the protection of his financial loans; and, as vice president of the corporation, was to receive 25% of any profits from the business. Prior to the institution of this suit, one J. C. Creamer was president and manager of the corporation, and, as such, looked after the corporate affairs; but at the time of trial the corporation had ceased to do any business,—it was not functioning.

On August 24, 1948 the corporation, by J. C. Creamer as president and general manager, attested by the secretary of the corporation under the corporate seal, executed and delivered to the defendant Killingsworth a chattel mortgage on all the assets of the corporation consisting of its listed machinery and equipment, miscellaneous office supplies, formula pertaining to the product, and, in addition, pertinent here: "All supplies, chemicals and containers and other things used in the business of Permatone Corporation now on hand or which may hereafter be acquired during the lifetime of this mortgage. * * * subject to all the conditions hereinafter mentioned."

The conditions sanctioned are: " * * * to secure the payment of certain indebtedness to mortgagee (Killingsworth), the same being evidenced by one non-negotiable note made by the mortgagor, dated August 24, 1948 * * * in the sum of $3,500 * * * to secure the payment of all other liabilities and indebtedness to said mortgagee now existing and which may hereafter arise, including indebtedness represented by a similar note or notes; * * * that on default in payment of any one of said notes * * * or upon the seizure of them (goods and chattels) * * * or if any holder of said indebtedness shall at any time feel unsafe or insecure from any cause, then, * * * said mortgagee, or the assigns, agent or representative of said mortgagee, are hereby authorized at mortgagee's option, to declare all said indebtedness due, and take actual possession of said property and to sell same at private sale without notice to mortgagor * * * as the law now requires for sales of property under execution. And the proceeds arising from such sale shall be applied, first, to the necessary and proper expense of such sale, then to the payment of said note then remaining unpaid, the balance, if any, to be paid to said mortgagor, or his order * * *."

The mortgage was forthwith, on August 26, 1946, duly filed in the office of the County Clerk of Dallas County, Texas.

In July, or about the first of August, 1948, the Meritone Corporation, by Mr. Killingsworth, Vice President, in behalf of and for the corporation, entered into an oral agreement or contract with the plaintiff Crump for the printing of the advertising posters, labels, cards, etc., depicting the "Meritone" brand of antifreeze, its adaptation for protection of cooling systems of automobiles against freezing, and for prevention of rust formation in radiators. Mr. Crump testified that Mr. Killingsworth gave him the order for the printing, saying (categorically denied by Killingsworth) that he would guarantee payment and that he wanted the advertising matter set up and printed before the winter months were out, because the product was an antifreeze—a winter product; that he personally would guarantee payment for the work done for the corporation; and that on such guarantee he (Crump) went forward with the contract, printing the advertising matter to the extent of $3,859.19, of which amount the Meritone Corporation, by its official (Mr. Creamer), on September 21, 1948, paid $2,000 by check drawn on the bank account of "The Meritone Corporation," leaving a balance of $1,859.19 as of date November 1948.

The record evidence further reveals that subsequent to August 24, 1946 (date of aforesaid mortgage) the defendant Killingsworth had advanced to the Meritone Corporation (aside from the $3,500 specifically recited in the mortgage aforesaid) money in various amounts evidenced by notes of the corporation in the total sum of $28,500; that the corporation subsequently became insolvent and ceased to do business, having outstanding claims and damage suits which grew out of damage to automobile radiator systems, which resulted from the sale and use of the salt-base emulsified antifreeze. Under the terms of the mortgage and in accordance therewith, on January 25, 1949 the mortgagee (defendant) exercised his right to sell, and did sell the mortgaged property, through his attorney, after due notice to the mortgagor and its stockholders; and the proceeds of said sale ($10,000) was applied as provided for in the aforesaid mortgage. The only property of the corporation upon which there could be any question of conversion or unlawful appropriation by the defendant (not covered

by the mortgage), was 24,000 gallons of antifreeze.

■ In due time the defendant requested the trial court to find and hold that at the time of the foreclosure of the mortgage against the properties of the corporation (including the 24,000 gallons of antifreeze), and even before such foreclosure, the antifreeze had become worthless and had no cash market value. The trial court refused to so find, but to the contrary held that the market value at the time of said sale was in excess of plaintiff's debt; however not finding specifically its value. We are of the opinion that appellant's points of error to the effect as requested should have been sustained. The provision of the mortgage, "all supplies, chemicals, containers and other things used in the business of Permatone Corporation, now on hand or which may hereafter be acquired during the lifetime of this mortgage," is of wide comprehension. "Supplies, chemicals, containers and other things used in the business * * * formula pertaining to product," may well include the finished product—the emulsified antifreeze. If, however, it can be reasonably said that the aforesaid provision of the mortgage does not embrace the finished product, and that the defendant was thus guilty of its conversion, certainly the burden of proof was on the plaintiff to prove that the antifreeze was of value and the extent of its reasonable cash market value at the time of such sale. The record evidence is uncontroverted that the antifreeze, being of salt base, was worthless, unusable in automobile radiators, and at the time of the sale had no value whatsoever; that it had no public acceptance, hence not saleable, which was the direct and sole cause of the corporation ceasing to do business. After the defendant had purchased the antifreeze at foreclosure, he was unable to make disposition of it at any price; in consequence offered to give the plaintiff "all or any part of it" gratuitously, which the plaintiff refused. Finally, the defendant, to save warehouse storage charges of $200 per month, gave the antifreeze to other parties that they might salvage the containers for their service in taking it away. The defendant received no consideration whatsoever for the antifreeze or its containers, but expended $50 to get it removed from storage.

The record further shows that the trial court found the foreclosure sale was conducted in accordance with the provisions of the mortgage; therefore we are of the opinion that the sale passed title to whatever property was sold to the defendant and, accordingly, if the antifreeze at the time of the sale was worthless, without value, and the plaintiff refusing to accept the antifreeze as a gift to him, he is in no position as cestui que trust to contend that the defendant is in equity liable as a trustee in making disposition of the antifreeze for which he received no profit. At most, the defendant could only be chargeable with property or its value and profits or interest accruing to him as a trustee, bound in good faith and fair dealing in the exercise of management and disposition for creditors and stockholders of the corporation.

■ As we view this record, there is neither pleading nor evidence of bad faith or unfair dealings on the part of defendant with respect to any of the transactions involved in this suit; thus the defendant having reaped no benefit and not having acted in bad faith towards the stockholders of the corporation in the premises, he is not liable, either personally or as trustee, in reference to any of the property which he received under the foreclosure proceeding. In consequence we are of the opinion that the evidence does not support the findings and judgment of the trial court in reference to the merits of this suit, and that the court's findings are contrary to the evidence; hence it becomes the duty of this Court to render such judgment as the court below should have rendered.

The appellant raises points of error to the action of the trial court in not sustaining his plea of privilege. In view of our disposition of the cause on the merits, we pretermit discussion of the points; such are overruled.

Accordingly the judgment of the trial court is reversed and judgment here ren-

dered in favor of the defendant Killingsworth, that the plaintiff recover nothing against him perforce of his suit. All cost taxed against the plaintiff.

Affirmed in part; reversed and rendered in part.